for a restoration or reassessment of the original tax, and this conclusion is based upon the authority of Cadmus v. Fagin, 47 N. J. Law, 549, 4 Atl. 323. With this result we cannot agree. It appears that the assessment which was considered by the court in that case was set aside for some reason which does not clearly appear, but it is made manifest that the decision is not based upon the invalidity of the law under which the assessment was made, nor is the validity of the law questioned; for the court, by the same order by which the assessment was vacated and set aside, appointed commissioners to reassess the tax for the improvement. The reassessment was made and confirmed, and it was held that such assessment related back to the date of the confirmation of the original assessment. It therefore appears that the facts in the case at bar do not bring it within the authority of that case. Here not only the original assessment, but all the proceedings leading up to it, were set aside, made void, and adjudged to be "for nothing holden." No continuance of such proceedings was possible, because the court held that "the act of the legislature under and by virtue of which said proceedings were instituted, the work done, and said assessments made is unconstitutional and void." No lien was ever created by the proceeding. It was null ab initio, and it follows that there was no breach of the grantor's covenant against incumbrances. Nor was there shown any breach of the contract made by the grantor with the plaintiff. There is no proof of an agreement on his part to pay any new assessment that might be made. He contended that the apparent lien of the original assessment was no incumbrance, because of the unconstitutionality of the law under which the proceeding was taken. The court sustained this view, and adjudged the assessment void, thus removing the cloud on the title. The grantor intended to protect the title against 'the original assessment and the reversal of that adjudication if appealed from, and he agreed that, if the original assessment was "finally adjudged to be a lien upon the property," he would pay the same. No such thing was ever done. No appeal was taken from the decree. The assessment which the plaintiff paid was a new assessment, made and levied under a new proceeding commenced de novo under another statute, the lien of which only attaches from the date of its confirmation, long after the date of the conveyance. No liability is created by the covenant nor by the agreement proved.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.

---

(63 App. Div. 25.)

BLINN v. SCHWARTZ et al.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. EJECTMENT—TRIAL—QUESTION FOR JURY.
    Plaintiff brought ejectment, and alleged that on March 30, 1890, when the deed to the land was executed, plaintiff was insane. On February 17, 1890, plaintiff appointed U. as his attorney, with power to sell and convey his land, and prior to the ejectment suit plaintiff sued U. for the

money he had received from defendant for the land, and alleged that the power of attorney had never been revoked. *Held*, that the question whether plaintiff was insane when defendant's deed was executed should not have been submitted to the jury, as, if such was the fact, his act was ratified by his action for the proceeds.

2. SAME—EVIDENCE—ADMISSIBILITY.

The complaint against U. was admissible to show that the plaintiff had ratified the sale to defendant by electing to pursue his remedy against U.

Appeal from trial term, New York county.

Ejectment by Christian Blinn against Julia Schwartz and others. Plaintiff's motion for a new trial on exceptions was ordered heard in the first instance in the appellate division. Exceptions overruled.

The action was brought to recover the possession and damages for the use and occupation by the defendants of property located on the northwest corner of Eighty-Sixth street and the Boulevard, which the complaint alleges has been and is wrongfully withheld from the plaintiff. The answer denies any wrongful withholding of the property and alleges that the defendants are in possession by virtue of a deed duly executed by the plaintiff to the defendant Schwartz on March 31, 1890, for the consideration of $78,000. In reply the plaintiff avers that he "has no knowledge or recollection of having signed or acknowledged any deed of conveyance" of the property, denies that such deed "was ever delivered by him, his agents or servants," and alleges that he has never received, nor does he know of, any consideration paid by the defendants; that at the time that the deed is said to have been executed he was insane, and wholly incapable of understanding the nature and effect of such an instrument; and the defendant Julia Schwartz, knowing him to be insane, took advantage of his condition to procure his signature, and the alleged consideration was insufficient, and inadequate for the property. Upon the trial the deed set forth in the answer was introduced in evidence, and, as stated in the record, "the plaintiff then offered evidence tending to show that Christian Blinn, the plaintiff, was insane on March 30, 1890, at the time he signed said deed to the defendant Julia Schwartz, and that plaintiff was insane from about the 1st of January, 1890, until within a few months from the time he was discharged from a sanitarium in 1895, and that he knew nothing whatever of signing any papers or of anything else which occurred during that time." The defendants then offered in evidence a power of attorney dated February 14, 1890, and acknowledged February 17, 1890, whereby the plaintiff appointed Henry Ungrich his attorney "to grant, bargain, and sell all and every the real estate and property which I own, * * * and on such terms as to him shall seem meet," as well as to exercise other general powers. Thereafter it was proven that the defendant Schwartz paid to the said Henry Ungrich $77,750 as consideration for the deed to her of the property in question. The defendants then offered in evidence, without objection at the time being taken, a summons and complaint in an action brought by the plaintiff July 2, 1897, against Henry Ungrich, the complaint alleging that the plaintiff, on the 1st of February, 1890, was engaged in buying and selling real property, and was seised of certain property (among which was the property on Eighty-Sixth street), and that on February 11, 1890, the plaintiff, "being in ill health," appointed the said Ungrich his attorney, and thereafter, on April 16, 1890, gave him a subsequent similar power, and the defendant accepted the trust and agency thereby conferred; that upon information and belief the defendant has sold and disposed of certain of the said property, if not all, and has personally received and taken the moneys and other valuable considerations paid therefor; that he has abused the trust reposed in him for his own advantage and benefit; "that said powers of attorney, as aforesaid, have never been revoked, and this defendant is now in full and complete charge of the affairs of the plaintiff," and has never paid to the plaintiff any of the consideration or profits received by him, and has refused to account therefor; that, "in order to ascertain the amount for which the defendant is account-

able to the plaintiff, it will be necessary to have a full discovery of all defendant's acts and transactions,"—wherefore judgment was asked for an accounting and discovery of the affairs and the moneys of the plaintiff. The record contains the further words: "The plaintiff objected to the receiving of said complaint in evidence on the ground that the same was immaterial," which objection was overruled, and exception taken. It was thereupon admitted that plaintiff was sane at the time he commenced the aforesaid action, and was sane when he brought this action, and that the action against Ungrich was commenced prior to the present action, and that the former is now pending in the supreme court, undetermined. On motion of the defendants, a verdict was directed in their favor, and to this direction the plaintiff excepted, and asked "to have the question of the plaintiff's sanity at the time of the making of the deed to defendant Schwartz submitted to the jury." This the court declined to do, and exception was taken. All the exceptions were ordered to be heard in the first instance at the appellate division, "to be brought on by the defendants."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Geo. B. Lester, for plaintiff.
E. W. S. Johnston, for defendants.

O'BRIEN, J. There are two principal questions presented upon this appeal,—one as to the error which it is alleged was committed by the court in refusing to permit the jury to determine whether the plaintiff at the time of the giving of the deed was or was not insane; and the other relating to the complaint in the action brought by the plaintiff against Henry Ungrich, which was introduced in evidence, and to the admission of which thereafter the plaintiff excepted.

The first question is one easily disposed of, because the determination of the jury one way or another as to the plaintiff's sanity at the time of the making of the deed would not be conclusive upon the merits. Although cases can be found holding that the acts and deeds of an insane person are absolutely void, and later cases are in favor of the holding that they are voidable only at the election of the insane person, or those who succeed to his rights. It is now the rule that, whether void or voidable, it is competent to make the acts of an insane person valid by ratification or election. This, of course, presupposes a complete knowledge of the facts at the time the election or ratification is made. But whether or not the deed is void or voidable (the only difference being that, as to a voidable deed, it is necessary to take some action in disaffirmance, while as to a void deed, that is unnecessary) is not conclusive upon the rights of the parties. Here the question is whether or not there was an election or ratification on the part of the plaintiff upon discovering that the consideration money had been paid to his agent, and that other property had been disposed of by him. He could reclaim the property, or obtain, by ratifying and affirming his attorney's acts, the money paid for this particular property. There was no request to go to the jury upon this question of whether there had been an election of remedies, even if it were a question of fact. It was upon the ground that he had elected a remedy inconsistent with the right to follow the defendants and reclaim the property that the case turned upon the trial. We are thus brought to the second exception, bearing upon the admissi-

bility of the complaint in the plaintiff's action against his agent. That action is still pending to recover from him, together with other relief, the very moneys which had been paid by these defendants to such attorney. The plaintiff urges that this complaint was immaterial, and was improperly admitted, because not within the issues. Upon the trial, however, the objection was not taken that it was not within the issues, the sole objection being that it was immaterial. We think it was clearly material, and also that it was within the issues, for the answer had set up as a defense a general denial of the plaintiff's allegation that the property was wrongfully withheld by the defendants. They had, therefore, the right to show any facts to establish that at the time of the trial the deed was plaintiff's deed. This complaint introduced in evidence shows that the plaintiff averred that the power of attorney which he had given "had never been revoked"; that the attorney had received moneys from those to whom he had given plaintiff's property, and that the power was given for the reason that the plaintiff was at the time "in ill health." It will be seen that the complaint makes no allegation that the plaintiff was insane when the power was given, and in this connection it appears that there was no request to have the jury determine whether he was insane at such time, the request made confining the time to the date when the deed was made. It would make no difference, however, had it been made, because it clearly appears that the plaintiff ratified and affirmed the power, and that he relied upon it, and was seeking to recover from his attorney the money received for this very property. The plaintiff admitted that at the time of the bringing of the action against his attorney he was sane. And to destroy the force of the election thus made no request was made to go to the jury as to plaintiff's ignorance of the real facts when he sued his agent. We think, therefore, that the complaint was properly admitted, and that it shows that the plaintiff had ratified his attorney's acts, and that he had elected to recover of the attorney. Having so ratified, the contention that the deed is void is answered, because it was within the power of the plaintiff to elect to pursue an action against his attorney rather than seek to obtain a return of the property. Here there was no offer to return to the defendants any of the moneys which it appears that they advanced; and, if it be assumed that the plaintiff could succeed in both of the actions which he has brought, he would not only obtain possession of the consideration price which had been paid, but would also get the property itself. We think that, having elected to pursue the former remedy, he cannot succeed as against these defendants, and obtain the property.

The exceptions accordingly should be overruled, and defendants should have judgment on the verdict as directed, with costs.

VAN BRUNT, P. J., and McLAUGHLIN and HATCH, JJ., concur.

INGRAHAM, J. I concur in the conclusion of Mr. Justice O'BRIEN'S opinion upon the ground that a deed of a lunatic, or one non compos mentis, is not void, but voidable, and relief in such a case must be had in a court of equity. In the early cases the distinction

between instruments that are void or voidable is not clearly defined, but I think it has always been the rule that the deed of a person not judicially declared a lunatic is voidable only. In Beverley's Case, 4 Coke, 123b, the rule is stated "that every deed, feoffment, or grant which any man non compos mentis makes is avoidable, and yet shall not be avoided by himself, because it is a maxim in law that no man of full age shall be in any plea to be pleaded by him received by the law to stultify himself, and disable his own person"; and this, I think, has always been the law of England. See Campbell v. Hooper, 3 Smale & G. 153, and cases cited. In Jacobs v. Richards, 18 Beav. 300, the rule is stated by the master of the rolls as follows:

"Where a deed prima facie good at law is brought before it, this court, in the exercise of its ordinary functions and jurisdiction, acts on it until it has been set aside. * * * When the court sets aside deeds for fraud, duress, or intoxication, the burden of proof lies on the party insisting that the deed ought not to be acted on; and we see no ground why, where insanity is alleged, a different principle should be applied. The advantages of requiring a deed to be set aside by an original or cross suit are obvious. The court has then the power of putting the party who has received some benefit under the transaction he seeks to impeach upon equitable terms, and is enabled to do full justice on setting aside the deed."

See, also, Greenslade v. Dare, 20 Beav. 284; Price v. Berrington, 3 Macn. & G. 486; Imperial Loan Co. v. Stone [1892] 1 Q. B. 599; and this is the rule in this state. In Jackson v. Gumaer, 2 Cow. 552, it was expressly held that a deed to or from a lunatic, before office found, is not void, but voidable only. In Ingraham v. Baldwin, 9 N. Y. 46, the same principle was applied; the court saying:

"A second objection to the admission of this testimony was that the lunacy of the mortgagor did not absolutely avoid the mortgage. It was at most voidable at the election of the lunatic or his personal representatives, or those claiming some interest under him in the premises. A lunatic is not absolutely disqualified from making a contract. The law will, in certain cases, even raise one by implication. There is a strong analogy between a lunatic and an infant in relation to their power to contract. Either can oblige himself for necessaries, and the law provides for each a formal process by which to avoid their agreements."

In Canfield v. Fairbanks, 63 Barb. 461, it is said:

"A court of equity, when its jurisdiction is invoked to set aside deeds and contracts of a person upon the ground of insanity, acts upon equitable principles. It is by no means a matter of course for a court of equity to set aside and declare void the act of a lunatic executed during his lunacy. It does so in no case except upon equitable terms."

Van Deusen v. Sweet, 51 N. Y. 378, would seem to be in conflict with this rule, but in that case it appeared that the grantor had been declared a lunatic by a proper judicial proceeding, where it had been expressly found that he was a lunatic at the time of the execution of the deed; that the deed was without consideration from a father to his son, who had knowledge of the grantor's condition. But, so far as this case holds that a deed executed by a person who has not been judicially declared incompetent is absolutely void is opposed to the weight of authorities, both in this state and in England. To hold that a deed executed by a person not judicially declared incompetent, regular upon its face, and properly acknowledged, is absolutely

void, so that no title is conveyed, upon subsequent proof of the insanity of the grantor would create great doubt and uncertainty as to the title to real estate. It would only be necessary for a grantor, or his heirs or devisees, at any time before the statute of limitations had run, to prove the insanity of the grantor to destroy a title valid upon its face. If such a conveyance is void, no terms can be imposed as a condition of avoiding it, although the lunatic has actually received the consideration, and the property has been improved relying upon the conveyance actually and properly executed. For this reason I think the action cannot be maintained, and that the dismissal of the complaint was proper. I should have considerable difficulty in sustaining this judgment upon the ground that the plaintiff had elected to affirm the deed by the commencement of the action against his agent, to whom it is alleged the consideration money was paid. It does not appear that at the time of the commencement of that action the plaintiff had any knowledge of the fact that the defendant claimed under a deed executed by him. The complaint in that action does not allege that the agent had received the consideration for this specific conveyance, and an election of remedies, to be enforced, must have been made after the party had full knowledge of the transaction; but the injustice of treating a deed executed as this was as absolutely void is apparent in this action. This plaintiff would be entitled to recover the property that his deed purported to convey, although he would also be entitled in his action against his attorney to recover the money that the attorney had received when acting in that capacity, and thus the plaintiff would get back his property, and would also retain the consideration that the defendant had paid for it.