HALLOHAN v. REMPE et al.

(Supreme Court, Special Term, Kings County. January 21, 1910.)

1. DEEDS (§ 193*)—EXECUTION—PRESUMPTION.

From a certificate of due acknowledgment of a deed by F. B. S. and M. B. S., his wife, there is a presumption, which can only be overcome by clear and convincing proof, it being conceded that F. B. S. was really F. B. and had assumed the former name, that M. B. S. was his lawful wife, M. B., and that she signed and executed the deed.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 193.*]

2. DEEDS (§ 207*)—CERTIFICATE OF ACKNOWLEDGMENT—EVIDENCE TO OVERCOME.

It is not clear and convincing evidence, necessary to overcome the certificate of the acknowledgment of a deed by the grantor's wife, that the notary, after testifying that he cannot recall any of the circumstances of the acknowledgment, and has no recollection of what the person looked like, states that it was not the person in court, who was such wife; and that the wife was taken to an insane asylum, for some reason not appearing, four years before execution of the deed, and was not living with her husband at the time the deed was executed.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 207.*]

8. EVIDENCE (§ 67*)—PRESUMPTION—INSANITY—CONTINUANCE.

The presumption that insanity existing at a certain time continues does not arise till the nature of the insanity appears to be of the continuing kind.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 87; Dec. Dig. § 67;* Insane Persons, Cent. Dig. § 6.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. DEEDS (§ 193*)—EXECUTION—PRESUMPTION—INSANITY.

There is no presumption from the fact of insanity of the grantor's wife, when his deed was executed, that she did not sign it.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 193.*]

5. DEEDS (§ 68*)—VALIDITY—SIGNING BY INSANE PERSON.

The insanity of the grantor's wife when signing his deed does not make it void, but only voidable; so that, so far as that affects it, it will stand till ·set aside in an action brought for that purpose on such ground, which is not the case where the action is brought to set aside the deed, so far as concerns her dower, on the ground that her signature was a forgery.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 68.*]

Action by Maye B. Hallohan, as committee of Mary Buchnowski, against Carrie Rempe and others. Judgment for defendants.

Edwin D. Hamlin, for plaintiff.

Sackett & Lang, for defendants.

CRANE, J. On the 25th day of May, 1900, one Frank B. Smith and Mary B., his wife, conveyed certain premises situated in Kings county by deed duly executed to Carrie Rempe. This deed was duly recorded, and thereafter the property was conveyed some five or six times until purchased in good faith and for value by the defendants Block and Goldstein. On May 25, 1909, Mary Buchnowski, an incompetent, through her committee, brought this action to set aside the deed of Smith to Rempe made in May of 1900 in so far as it attempted to convey the dower interest, alleging that Frank B. Smith was Frank Buchnowski, and the plaintiff was his wife and had never signed the said deed; her alleged signature thereto being a forgery. The deed thus attacked was signed by Frank B. Smith and Mary B. Smith in the presence of G. Winslow Powell, a notary; the acknowledging clause reading as follows:

"State of New York, County of Kings, City of New York.

"On this 25th day of May in the year one thousand nine hundred, before me personally came Frank B. Smith and Mary B., his wife, to me known and known to me to be the individuals described in and who executed the foregoing instrument, and they thereupon duly acknowledged to me that they executed the same.

"[Signed]          G. Winslow Powell, Notary Public, 105 Kings Co., N. Y."

It is conceded that Frank B. Smith was Frank Buchnowski, having assumed that name many years ago for reasons not given, and the presumption would be that his wife's name followed the change made by her husband.

What is the force of the presumption arising from the due acknowledgment of this deed? As stated in Albany County Savings Bank v. McCarty, 71 Hun, 227, 24 N. Y. Supp. 991:

"The acknowledgments on said papers were presumptive, but not conclusive, evidence of the due execution thereof. * * * The evidence to impeach the certificate of the acknowledgment of a deed must be so full and satisfactory as to convince the mind that the certificate is false or forged. A mere suspicion or even preponderance of evidence less than sufficient to establish a moral certainty to that effect is insufficient."

---

This case was reversed in 149 N. Y. 71, 43 N. E. 427, but this part of it affirmed.

In Young v. Duvall, 109 U. S. 573, 3 Sup. Ct. 414, 27 L. Ed. 1036, where a wife claimed that she had never acknowledged an instrument and that it was procured from her through fraud, the court had this to say:

"The certificate of the officer states every fact essential under the statute to make the deed, upon its being delivered for record, as effectual in law as if Mrs. Young was an unmarried woman. * * * It was incumbent upon him to explain the deed fully to the wife, and to ascertain from her whether she willingly signed, sealed, and delivered the same, and wished not to retract it. * * * To that end he was required to examine her privily and apart from her husband. These facts were to be manifested by a certificate under his hand and seal. Of necessity, arising out of considerations of public policy, his certificate must be regarded as an ascertainment in the mode prescribed by law of the facts essential to his authority to make it; and if it can be contradicted to the injury of these who in good faith have acted upon it the proof to that end must be of such a character as will clearly and fully show the certificate to be false or fraudulent. The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity in the titles to real estate which would inevitably follow from one less rigorous."

See, also, Griffin v. Griffin, 125 Ill. 430, 17 N. E. 782.

When the notary certified that Frank B. Smith and Mary B., his wife, appeared before him and acknowledged the execution of the deed, and it appears that Frank B. Smith was Frank Buchnowski, Mary B. Smith, his wife, must have been Mary Buchnowski. The notary certifies that his wife appeared. He had but one lawful wife, and that, Mary Buchnowski. The presumption is, therefore, that Mary Buchnowski, the plaintiff in this case, signed and executed this deed, and this presumption can only be overcome by clear and convincing proof.

What is the proof, or, in the first place, what is lacking in the proof?

The deed of May 25, 1900, is not produced, and there is no evidence that the signature thereto of Mary B. Smith was not the signature or handwriting of the plaintiff. Mary Buchnowski, the wife, did not testify, having been lately adjudged insane. Neither did Frank Buchnowski or Frank B. Smith; no very great effort apparently having been made to find him, although his residence is in Rockland county. The woman Mary Enut, living with Frank B. Smith in 1900, who, it is claimed by the plaintiff, signed this deed as his wife, was not called as a witness.

The affirmative proof offered by the plaintiff consists of facts from which it is said the inference must be drawn that she was not present when the deed was signed nor in mental condition to execute it on May 25, 1900, and therefore did not. The facts are not unlike those in the Albany County Savings Bank Case above cited.

The notary, G. Winslow Powell, was called as a witness, who swore that he did not recollect the person Mary B. Smith, or the taking of the acknowledgment. When asked if he took the acknowledgment of Mrs. Buchnowski, whom he saw sitting in court, as Mary B. Smith, his answer was:

"Not that I remember. I cannot recall any of the circumstances in regard to the acknowledgment of that deed.

"Q. Have you any recollection at all as to what the person looked like whom you took the acknowledgment of to that deed? A. No, sir."

Although the witness subsequently said it was not "this lady," meaning Mary Buchnowski, yet, in view of his previous statement, he apparently did not recollect the persons or incidents at all.

The only other facts which tend to prove the insanity and absence of Smith's wife in May of 1900 are the following: In December of 1902 Maye B. Hallohan saw her mother, Mrs. Buchnowski, in the asylum at Middletown, Conn., and brought her home from there to live with her in April of 1903. On December 21, 1908, this daughter was appointed by the Supreme Court the committee of the person and property of her mother, Mary Buchnowski.

Where was Mary Buchnowski prior to 1902 and in May of 1900?

The same daughter says that in 1886 her father took her to an insane asylum in Middletown, Conn., when she was five years old, to see her mother, and that in May of 1900 her mother was not living with her father. What the woman was doing in the Middletown asylum in 1886 does not appear; whether or not at that time she was insane is not stated. No evidence whatever is introduced as to the woman's mental condition at that time, or as to the form of her insanity if she were mentally diseased. It is common knowledge that people are sent to public asylums every day for temporary insanity and with recurring spells require intermittent incarceration. Among such forms of insanity are acute mania, acute melancholia, alcoholic insanity, and curable dementia. How long Mary Buchnowski stayed in the Middletown institution is left without proof. The books of the asylum would evidently show this, but have not been produced. Considering the various mental ailments and the frequent recoveries, there can be no presumption in this case that because Mary Buchnowski was in the asylum in 1886 she was there in 1900. The presumption that insanity existing at a certain time continues does not arise until the nature of the insanity appears to be of the continuing kind. Gardner v. Gardner, 22 Wend. 526, 34 Am. Dec. 340.

Greanleaf on Evidence, vol. 1, § 42, says:

"If derangement or imbecility be proved at any particular period, it is presumed to continue until disproved unless the derangement was accidental, being caused by the violence of a disease."

In Hix v. Whittemore, 4 Metc. (Mass.) 545, we find this statement of the presumption:

"It is not, therefore, to be stated as an unqualified maxim of the law, 'Once insane, presumed to be always insane,' but reference must be had to the peculiar circumstances connected with the insanity of the individual. There must be kept in view the distinction between the inferences to be drawn from proof of an habitual or apparently confirmed insanity and that which may be only temporary."

See, also, Wright v. Wright, 139 Mass. 177, 29 N. E. 380.

The nature of Mrs. Buchnowski's mental disorder, if she had any, is not given; in fact, no reference whatever is made to it in any part of the testimony. There is no proof even that Mary Buchnowski was

an inmate of the asylum and not an employé therein, and no evidence that she was ever committed to the institution or adjudged insane until 1908. Under these circumstances, there can be no proper inference that Mary Buchnowski was insane or in the asylum in 1900, and certainly not a presumption which would amount to clear and convincing proof.

But assuming that Mrs. Buchnowski was insane in 1900, it does not follow as a consequence that she did not, or could not, sign the deed of May 25th of that year. If she did sign the deed as the notary certifies, her insanity would not make it void, but only voidable. Blinn v. Schwarz, 177 N. Y. 252, 69 N. E. 542, 101 Am. St. Rep. 806. The deed would stand until it had been set aside in equity because of the grantor's insanity. Smith v. Ryan, 116 App. Div. 397, 401, 101 N. Y. Supp. 1011.

This action is not brought for any such purpose.

I therefore conclude in this case that the very strong presumption of the validity and regularity of this deed arising from the formal acknowledgment before the notary has not been overcome by clear and convincing proof, and that the plaintiff has failed in her endeavor to establish that the deed of May 25, 1900, was not signed and acknowledged by Mary Buchnowski, wife of Frank Buchnowski, alias Frank Smith.

The defendants insist that the evidence in this case, while sufficient to establish Frank B. Smith's marriage to a Mary B. Smith, or Mary Enut, is not sufficient to establish his marriage to Mary Buchnowski. In view of the beautiful devotion shown by the daughter of Frank and Mary Buchnowski, Mrs. Hallohan, to her mother, I should hesitate a long while before so finding, and I refuse so to find in this case, placing my decision for the defendants upon the grounds above stated.