PEARROW *v.* VADEN.

4-6239                                    148 S. W. 2d 320

Opinion delivered March 10, 1941.

*Louis Tarlowski,* for appellant.

*Quinn Glover* and *J. S. Abercrombie,* for appellee.

SMITH, J.  Questions are raised by the pleadings and testimony in this case a recital of which would only confuse the decision of the controlling issue in the case, and that is, the proper construction of the will of A. J. Pearrow, who died testate on September 3, 1932.  The testator owned at the time of his death five lots in the city of Little Rock.  The title to three of them was settled in the decree from which is this appeal, and no issue is raised as to those lots.  The appeal from that decree involves only the title to the remaining two lots, numbered 5 and 6.

Pearrow was survived by his wife, to whom no child was born, and six children by his former wife.  Encumbrances outstanding on the lots at the time of Pearrow's death made it necessary for the widow and heirs to have numerous transactions between themselves, as a result

of which title. to the three lots numbered 2, 3, and 4 was conveyed to other persons. The title to these three lots was confirmed in the purchasers thereof in the decree from which is this appeal, and from that portion of the decree no one has appealed. The will reads as follows:

"That I, A. J. Pearrow, of Little Rock, Arkansas, being in poor health but of sound and disposing mind and memory and desiring to dispose of all my property and effects at my death, do hereby make, publish and declare this as and for my last will and testament, hereby revoking all other wills and codicils thereto at any time made by me.

"First: I direct that all my just debts, including expenses of my last illness and funeral, be paid.

"Second: To my beloved wife, Dona Pearrow, I give and bequeath all of my remaining property of whatever kind, real, personal and mixed and of whatever nature during her lifetime with the right to dispose of any or all of said property in the event that her financial condition or health make it necessary so to do.

"Third: To each of my children, Mamie P. Vaden, Charlie Pearrow, A. J. Pearrow, Jr., Walter Pearrow, Roy Pearrow, and Julian Pearrow or to the heirs of such as may die before me, I give and bequeath the sum of one dollar in cash to be paid out of any property left by me at my death.

"Fourth: At the death of my wife, Dona Pearrow, I direct that all property remaining from my estate be divided among my children, Mamie P. Vaden, Charlie Pearrow, A. J. Pearrow, Jr., Walter Pearrow, Roy Pearrow, and Julian Pearrow as follows, to-wit:

"That to my daughter, Mamie P. Vaden, I give and bequeath one-fourth ($\frac{1}{4}$) of all of the property remaining undisposed of at the death of my wife, Dona Pearrow, and to my sons, Charlie Pearrow, A. J. Pearrow, Jr., Walter Pearrow, Roy Pearrow, and Julian Pearrow, I give and bequeath the remaining three-fourths ($\frac{3}{4}$) of my property as remains unsold or undisposed of at the death of my wife, Dona Pearrow, share and share alike, the heirs of any such sons who may have

died in the meantime to receive whatever interest their father would have received in this estate had he been living.

"Five: I hereby constitute and appoint my daughter, Mamie P. Vaden, and my wife, Dona Pearrow, as joint executors under this will without bond and at the death of my wife, Dona Pearrow, such property as may come into the hands of my daughter, Mamie P. Vaden, is to be handled by her as executrix under this will without bond and may be retained or disposed of for the purpose of distribution or income and a division made of the proceeds in proportion and in conformity with the directions as heretofore made as to such portions as each one of my children is to and shall receive and it shall be discretionary on the part of my said daughter, Mamie P. Vaden, whether or not any or all of said property shall be sold or retained and the proceeds distributed under the terms of this will."

The widow insisted, in the court below, that this will gave her title in fee to the lots, and that, if not so, her financial condition and the state of her health gave her authority to sell the undisposed of lots numbered 5 and 6. The court construed the will as devising to the widow only a life estate, but "The court finds that the condition of health and financial condition of intervener (the widow) is such that she has a right to sell, lease or dispose of the property under the will, but she is empowered to sell only a life estate." This finding of fact as to the widow's financial condition and the state of her health does not appear to be seriously questioned; in any event, that finding is abundantly sustained by the testimony.

Wills similar to the one here involved are quite common, and the annotated cases cite innumerable decisions construing them. A question which has frequently arisen, and been decided in these cases is whether the will under review in a particular case devised a fee title or a mere life estate. It will not be necessary, however, for us to go beyond our own decisions to determine that Pearrow's will conveyed only a life estate. The question

in the case is the effect of the power to sell given the life tenant.

Our leading case on the subject, and one frequently cited by courts in other jurisdictions, is that of *Archer* v. *Palmer,* 112 Ark. 527, 167 S. W. 99, Ann. Cas. 1916B, 573, although we have other cases in point both earlier and later.

In the Archer case it was held that where a testator devised an estate for life only, with the added power to the life tenant to convey an estate absolutely, the life tenant may defeat the estate of the remainderman by the exercise of the power of disposal.

The cases chiefly relied upon by the heirs to support their contention that the widow was given no power to convey the fee are those of *Patty* v. *Goolsby,* 51 Ark. 61, 9 S. W. 846, and *Douglass* v. *Sharp,* 52 Ark. 113, 12 S. W. 202. The last cited case is a mere affirmance of the former, and is disposed of in a *per curiam* opinion of four lines. In this Goolsby case the widow's right to convey the fee was conditioned upon the fact that she remained unmarried, a condition which might or might not continue.

Rarely are two wills found which are exactly alike, and the construction of one may or may not be helpful in the construction of the other. The purpose of construction, in any and all cases, is to determine the intention of the testator, and that intention must be derived from the language employed in the will under construction.

The heirs insist that the Goolsby—and not the Archer —case controls, for the reason that Pearrow's will gives the life estate and the power to sell in one section, as did the will in the Goolsby case and in this respect is distinguishable from the Archer case. The same contention was made in the case of *Union & Mercantile Trust Co.* v. *Moore,* 143 Ark. 519, 220 S. W. 820; but Justice HART there said: "It is claimed that the holding in the case of *Archer* v. *Palmer, supra,* was based upon the fact that the life estate and the power of disposal were not given in the same clause of the will. We do not agree with

counsel in that contention. The court, by the cases cited, shows that it intended to follow the current of authority on the question in this country, which holds that when a whole will as considered and read together shows that it was the manifest intention of the testator to give a life estate with the added power in the life tenant of disposing of the whole estate during his life, and the life tenant exercises the power of disposal during his lifetime, the estate vests in those to whom the life tenant granted it. The cases of *Patty* v. *Goolsby,* 51 Ark. 61, 9 S. W. 846, and *Douglass* v. *Sharp,* 52 Ark. 113, 12 S. W. 202, relied upon by counsel for the defendant, are not applicable. There is nothing in either case to indicate that the testator intended to give to the life tenant the absolute power to dispose of the fee in the estate. Such intention is clearly indicated by the unrestricted power of disposal expressly granted by the second clause of the will under consideration, and this view is materially strengthened when we consider the language in the first part of the third clause.''

Now, Pearrow's will does not grant to the widow the absolute right to convey the fee title under any and all circumstances. There is imposed a condition which must exist before this power may be exercised, that is, ''that her financial condition or health make it necessary so to do.''

This is a condition not so uncertain that it may not be definitely determined, as was the question whether the widow would remain unmarried, the condition upon which the widow in the case of *Douglass* v. *Sharp, supra,* was allowed to convey. The will there construed provided that ''in the event that she (the widow) marries, then all my property, real and personal estate, notes and accounts, shall go to my children now living or who may be living at the time of my wife's death or marriage, to be divided equally between them, share and share alike.'' In other words, the power in that case was too contingent to be enforceable, as it was always dependent upon the widow remaining unmarried.

Under the title, ''Life estate with limited power of disposition,'' it is said, in Vol. 2, Page on Wills (2d Ed.),

§ 984, that "If testator devises an estate which is clearly a life estate, and adds to such devise limited powers of disposition and alienation, the authorities are nearly unanimous in holding that such a power of disposition does not enlarge the life estate into a fee, but that the estate created is exactly what it purports to be; that is to say, a life interest with power to testator [life tenant] under certain conditions and in certain methods to dispose of the fee. The limitation upon the power of disposition frequently consists in a restriction to sell only so much of the property devised as may be necessary for the support and maintenance of the life tenant, or his children. The power of appointment does not enlarge a life estate into a fee if limited in any other manner; as where the right to sell is limited to a right to sell with the consent of some other person; or on the happening of a specified event, or where the power to sell is given in order to provide for reinvestment of the proceeds, especially if such reinvestment is to be made for the benefit of certain designated remaindermen; or where the life tenant is given power to dispose of the property at his death."

In the chapter on Powers, 21 R. C. L., p. 778, it is said: "There can be no doubt that when the power of disposal, added to a life estate, is limited to a disposal for support or maintenance the life estate is not thereby enlarged into a fee, and the power can be exercised only when the contingency exists, but if a disposal is made by the tenant for an authorized purpose the purchaser takes a good title. Where the power is to be exercised 'in case of necessity,' the determination of the donee of the power, made in good faith, that a necessity exists, is conclusive."

There is a conflict in the authorities as to whether the determination of the life tenant's necessities, upon the existence of which the power to sell is contingent, may be conclusively made by the life tenant for whose benefit the power may be contingently exercised.

In the case of *Cain* v. *Cain*, 127 Ala. 440, 29 So. 846, the headnote reads as follows: "A will in which the testator devises all of his real and personal property to

his wife, to have and control it as he would do if living, and 'to sell and convey any property she may choose for her support and comfort, as she may see proper, during her natural life; and at her death, what may be left of my said estate, the same to be divided according to law in such cases made and provided,' gives to his wife an estate for life in all of his property, with the absolute right of disposition of the same without restraint or control by the courts; and her right of disposition is not limited to the necessities for her support and comfort.''

It was insisted in this Alabama case that the widow's power to sell was not general, but was limited. Upon that contention it was there said: ''In Hil. Real Prop., c. 57, § 9, it is laid down that 'a devise to one for life, with power to sell if necessary for his comfortable support, creates a life estate with a contingent power, and a party claiming under a sale by the devisee must prove that the contingency has happened'.''

A headnote to the case of *Peckham* v. *Lego*, 57 Conn. 553, 19 Atl. 392, 7 L. R. A. 419, 14 Am. St. Rep. 130, reads as follows: ''2. Permission to persons to whom the use of an estate is devised for-life, to use so much of the bulk of the estate as is necessary for their comfort will give them the right to use what is necessary for their support. The determination as to the existence of such necessity is subject to the supervision of the court, and the amount to be used will be fixed at what is needed in reference to the situation and condition in life of the devisees.''

This Connecticut case is annotated in 7 L. R. A. (Extra Annotated), p. 419. The annotator gives a synopsis of what were then recent decisions as follows: ''A widow given the use of realty during life, with the right to sell the same for her support, is vested with the life estate and power of sale to convey for her maintenance and support. *Griffin* v. *Griffin*, 15 West. Rep. 51, 125 Ill. 430, 17 N. E. 782.

''Under a will giving testator's wife all his property of every kind, to use and dispose of for her maintenance during her natural life, a conveyance of the real estate

is valid if the parties act in good faith; and the purchaser is not obliged to show that there was any emergency requiring a sale. *Richardson* v. *Richardson,* 80 Me. 585, 16 Atl. 250.

"Where testator devised to his wife, during her natural life, 'our homestead, with all our farm land,' and in the same item subsequent words dispose of 'what will not be consumed of real and personal estate at my wife's decease,' and in other following items the devises named are limited to property 'not herein otherwise appropriated,' the widow has authority to convey the fee of the land devised to her. *Silvers* v. *Canary,* 7 West. Rep. 359, 109 Ind. 267, 9 N. E. 904.

"A bequest giving to testator's wife all his property, to use to her own use and benefit as she shall deem best for herself and their daughter, is absolute to the wife, and the daughter has no recoverable interest in the property or its proceeds. *Bulfer* v. *Willigrod,* 71 Iowa 620, 33 N. W. 136."

It is not essential here to determine whether one, to whom a life estate has been conveyed and upon whom a power to sell the remainder has been conferred, has the ultimate right to determine whether the condition has arisen under which the power may be exercised, for the reason that in the decree from which is this appeal, where the remaindermen were present, it has been found and was determined, that the life tenant's financial and physical condition made it necessary for her to sell her estate, and that power was granted her by the decree, but her right to sell was limited by the decree to her life estate.

We think the proper construction of the will does not thus limit the interest which the widow may convey. Had she been given a life estate without any power to convey, she could have sold that estate. We think the title the widow may convey is not confined to her life estate, but covers the fee title to so much of the property as may be subject to the power. If the will conferred the right only to sell the life estate, the power is meaningless, as she had the right otherwise to sell her life estate, and the provisions of the fourth paragraph for the division of

all property remaining at the death of the widow would be equally meaningless.

Paragraphs 2 and 4 of the will must be read together, and when so read effect may be given to them only by holding that it was the testator's intention that his children should divide among themselves, in the proportions indicated, any of the devised property which the widow had not conveyed in her lifetime for the permissible purposes, because that—and that only—would be the "property remaining."

Under the facts in this record, as found by the court, in a proceeding between parties adversely interested, the showing has been made that the condition has arisen, for which the testator intended to make provision, and that the widow has the right to sell and convey, not merely her life estate, but the fee title, to meet that condition.

The decree of the court will, therefore, be reversed, and the cause will be remanded with directions to modify the decree to conform to this opinion.